Richard A. Marcus, Esq. (CA SBN 183140)
Law Offices of Richard A. Marcus
28494 Westinghouse Place, Suite 205
Valencia, California 91355
Tel: (661) 257-8877
Email: Richard@attorneyrichardmarcus.com

Attorneys for Plaintiffs, Gloria Gaynor, ET AL.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA GAYNOR AND ROBIN RANDALL,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>JOEL DIAMOND, individually and a/k/a JOEL DIAMOND ENTERTAINMENT and, SILVER BLUE PRODUCTIONS, LTD., SILVER BLUE RECORDS, SILVER BLUE MUSIC, LTD., and OCEAN BLUE MUSIC LTD.,<br><br>　　　　　　Defendant(s) | Case No.: 2:12:25-cv-07837-SWS-AS<br><br>SECOND AMENDED COMPLAINT |

Plaintiffs, through their undersigned attorneys, Drohan Lee LLP, hereby complain

of Defendants as follows:

**NATURE OF THE ACTION**

1.    By this action, two well-known authors and recording artists, including a cultural

icon of the Twentieth Century, Gloria Gaynor, seek damages and equitable relief

arising from Defendants' continuous, systematic and callous disregard of Plaintiffs'

legal rights and interests. Rather than honoring a relationship that should have allowed Plaintiffs to focus on their creative work while relying on Defendants' fiduciary integrity and explicit contractual commitments, Defendants failed to fulfill their obligations to inform Plaintiffs of the licensing and use of their works and instead wrongfully extracted economic benefits to which they were not entitled. Defendants' malfeasance extended to intentional acts of fraud and misrepresentation. Having refused to remedy their wrongdoing despite Plaintiffs' repeated requests, Defendants have left Plaintiffs with no alternative but to commence this action to protect their intellectual property rights.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), as this case arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. The Court also has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a), as the federal and state claims form part of the same case or controversy. Jurisdiction exists without regard to the amount in controversy.

3. This Court has personal jurisdiction over each Defendant because each Defendant conducts business in or maintains operations in this District, is present in this District for jurisdictional purposes, and/or has sufficient minimum contacts with this District such that the exercise of jurisdiction comports with traditional notions of fair play

and substantial justice.

4.    Upon information and belief, each of the Defendants has and continues to receive royalty, licensing and other payments for the exploitation of one or more of Plaintiffs' works.

5.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because Defendants conduct business in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

## JOINDER

6.    Plaintiffs are properly joined in this action under Federal Rule of Civil Procedure 20(a)(1) because their claims arise out of the same transaction, occurrence, or series of transactions or occurrences. Each Plaintiff alleges that Defendants engaged in a uniform and recurring course of misconduct in connection with the exploitation of Plaintiffs' musical works, including: (a) falsely or fraudulently asserting, registering, or maintaining co-authorship and/or ownership interests in Plaintiffs' compositions and/or sound recordings; and (b) systematically failing to account for and pay royalties owed from Defendant's exploitation of those works.

7.    The co-authorship and royalty practices alleged herein constitute a single, continuing, and centralized pattern of conduct implemented and directed by Defendants through common internal practices, procedures, and accounting systems.

8. Resolution of Plaintiffs' claims will require proof concerning Defendants' common practices, procedures, and accounting systems for: (a) identifying, recording, and reporting authorship and ownership of musical works; (b) representing those authorship and ownership positions to third parties, distributors, publishers, and collection entities; (c) calculating, reporting, and paying royalties; and (d) maintaining the books, records, metadata, and accounting inputs used to determine royalty allocations and payments.

9. Substantial portions of the evidence relevant to liability, including Defendants' royalty accounting records, chain-of-title and authorship documentation, co-authorship representations, internal communications, and audit materials, are common to both Plaintiffs' claims.

10. Plaintiffs' claims present common questions of law and fact, including, without limitation: (a) whether Defendants' co-authorship and ownership representations were false or misleading; (b) whether Defendants knew or should have known those representations were false or misleading; (c) whether Defendants' co-authorship practices were undertaken pursuant to a company-wide policy or practice; (d) whether Defendants' royalty accounting and payment practices complied with contractual and legal obligations; (e) whether Defendants acted intentionally, willfully, or with reckless disregard of Plaintiffs' rights; and (f) the nature and scope of relief available.

11.   Plaintiffs' joinder is consistent with the Court's broad authority to permit joinder to avoid multiple litigations of similar controversies. Proceeding in a single action will promote judicial economy, avoid inconsistent determinations regarding Defendants' uniform practices, and reduce duplicative discovery and expert analysis. Any Plaintiff-specific damages issues can be addressed through appropriate case-management procedures without requiring severance.

12.   Accordingly, joinder of Plaintiffs in this action is proper under Rule 20(a)(1).

## **PARTIES**

13.   Plaintiff Gloria Gaynor ("Gaynor") is a former resident of New York and currently a resident of New Jersey.

14.   Plaintiff Robin Randall is a resident of California ("Randall").

15.   Upon information and belief Defendant, Joel Diamond ("Diamond") is, and at all relevant times was, an owner and officer of the corporate Defendants and is currently a California resident.

16.   Prior to becoming a resident of California, Diamond resided in New York during relevant time periods, including 401 E. 74th Street, New York, NY and 220 Central Park South, New York, NY. During relevant time periods, Diamond sublet the 220 Central Park South address.

17.   Diamond has conducted, and continues to conduct business as "Joel Diamond Entertainment," an unincorporated business.

18. Upon information and belief, Defendant Silver Blue Productions, Ltd ("SB Productions"), is a domestic corporation organized under the laws of the State of New York and maintains an office at 3940 Laurel Canyon Blvd. St 441, Studio City, CA 91604.

19. During relevant time periods, SB Productions' location was listed as 401 E. 74th Street, New York, NY.

20. SB Productions was formed in February of 1970. It was dissolved by proclamation on June 26, 2002, its Annulment of Dissolution was filed in November of 2003, and it was again dissolved by proclamation in January of 2012. SB Productions remained dissolved until July of 2019. Upon information and belief, Diamond has since attempted to reinstate SB Productions. Upon information and belief, SB Productions has received and continues to receive payments for the exploitation of Plaintiffs' works.

21. Upon information and belief, Defendant Silver Blue Music, Ltd. ("SB Music"), was and/or is a domestic corporation organized under the laws of the State of New York and maintains an office at 401 E. 74th Street, New York, NY 10021

22. SB Music was dissolved by proclamation in June 2001. Upon information and belief, SB Music continues to own certain copyrights, is signatory to third-party contracts, and continues to receive payments for the exploitation of Plaintiffs' works.

23. Oceans Blue Music Ltd. ("Oceans Blue") was dissolved by proclamation in June

AMENDED COMPLAINT - 6

2001. Upon information and belief, it continues to own certain copyrights, is signatory to third-party contracts and continues to receive payments for the exploitation of one or more of Plaintiffs' works.

24. Upon information and belief, Defendant Silver Blue Records ("SB Records"), was and/or is a domestic corporation organized under the laws of the State of New York and maintains an office at 401 E. 74th Street, New York, NY 10021.

25. SB Records was dissolved by proclamation in June of 2001. Upon information and belief, it continues to be listed as the publisher of certain copyrights, is signatory to third-party contracts, and continues to receive payments for the exploitation of Plaintiffs' works.

## GLORIA GAYNOR

26. Gloria Gaynor's legendary performance and recording career spans over 50 years, never losing momentum. The two-time GRAMMY® winner has achieved global stardom with hit songs in the charts in all five decades. She has also shared her talent through roles in film, television, and the Broadway stage.

27. Gloria continues to tour the world with her ten-piece band performing in the USA, UK, Europe, South America, and beyond. She has performed at sold-out concert venues and headlined music festivals around the globe such as the Heineken Jazzaldia Festival (Spain), World Expo 2020 (Dubai), Boogietown Festival (UK), Carnaval de Mazatlán (Mexico), Starlite Festival (Spain), the Tecate P'al Norte

Festival (Monterrey, Mexico) and The Big E (USA). Recent 2025 performances include at Lighthouse Ministries in Gulfport, Rock in Rio festival in Brazil, and the Saldemusica Festival in Spain.

28.    Gloria has been honored in the past several years by the CCU's Women in Leadership Conference and by Dowling College, which presented her with an Honorary Doctorate of Music. She was presented with the Martin Luther King, Jr. Award by the Consulate General of Israel, Ido Aharoni, who stated that Gloria has "inspired millions with her music to empower themselves" over the years. Gloria was also honored by the Library of Congress on May 6, 2017, after having the recording of her global anthem, "I Will Survive," inducted into the library's collection of recordings with American historical & cultural significance in 2016. That same year, Gloria was inducted into the New Jersey Hall of Fame at a special ceremony in Asbury Park, New Jersey. And in the summer of 2019, Gloria was invited to sing the "Star-Spangled Banner" by U.S. astronaut and American treasure, Buzz Aldrin, at the APOLLO XI 50th Anniversary Gala.

29.    Gloria was nominated as a 2025 Kennedy Center Honoree.

**ROBIN RANDALL**

30.    Robin Randall ("Randall") continues to be an active composer who, during the period relevant to this action, collaborated with her mother as part of a two-person songwriting team. Robin Randall's mother, Judithe Randall ("Judithe"), passed

away on April 3, 2002.

31.  Robin has been a professional songwriter, recording artist, performance pianist and music instructor for over 45 years, having had her first song recorded for a CBS TV movie at only 17 years old. Throughout her career Robin has received numerous awards and accolades, including for her songs appearing on platinum and gold albums, as well as gold singles.

32.  Robin's long list of credits includes the hits "Tomorrow Doesn't Matter Tonight" by Starship, "Where Are You Now" by Roxus and "Last Time" by Agnetha Faltskog. Robin has also written for and had music featured in numerous television shows and movies including Baywatch, Starting Over, Tough Love, Confessions of a Teen Idol, and The Amy Fisher Story. In 2005, Robin worked with American Idol Season 7 finalist, Brooke White, on her debut album "Songs from the Attic."

33.  Also, an accomplished writer, Robin co-authored the book "Lead Sheet Bible" published by Hal Leonard Publishing. Robin continues encouraging the love of music by teaching at the Grove School of Music, Musicians Institute, and The Songwriting School of Los Angeles for over 35 years. She has received the Teacher of the Year Award three times from the Musicians Institute.

**CONTRACTS WITH GAYNOR**

34.  In or about 1982, Gaynor and her then-husband, Linwood Simon ("Simon"), were introduced to Diamond. Gaynor subsequently entered into a series of agreements

with Defendants, negotiated with Simon's participation (the "Gaynor Agreements"). Simon retained the original copies of these agreements, and following the parties' divorce, he maintained custody of them. As a result, Gaynor no longer has access to the records.

35.    Gaynor has requested copies of all publishing, production, recording, or other agreements governing her work; Defendants have failed to produce such documents. Consequently, the dates, terms, and scope of the Gaynor Agreements, as well as related agreements with third parties, remain unknown to Gaynor and are within Defendants' exclusive possession and control.

36.    Upon information and belief, Defendants assert that the Gaynor Agreements classified her recordings and creative works as works-for-hire, which Gaynor denies. Gaynor maintains that none of her works were created as works-for-hire for Defendants.

37.    Any agreement with Defendants governing Gaynor's work would necessarily require the payment of royalties to her as both writer and recording artist. In correspondence through counsel, Diamond has acknowledged an obligation to pay royalties on record sales, yet no such payments have been made.

38.    Gaynor is uncertain of all the contracts between Defendants and third-parties related to Gaynor's works, but is aware of at least a 1983 recording agreement between CBS Records, a division of CBS Records, Inc. (now SONY Music), and SB Productions

(the "CBS Agreement," annexed as Exhibit A), which provides for advances and royalties in connection with the exploitation of Gaynor's recordings. Upon information and belief, SB Productions has never paid Gaynor royalties under the CBS Agreement and has never provided a full accounting, despite repeated requests.

39. In response to Gaynor's demand for payment and an accounting under the CBS Agreement, Diamond produced selected SONY royalty statements covering a one-year period from July 1, 2022, through June 30, 2023, and Diamond has asserted that Gaynor is not owed monies because she is not in a "recouped position." Diamond has also refused to disclose any alleged recoupable balance, historical royalties received, or total sums paid to SB Productions over the life of the CBS Agreement.

40. Given Gaynor's long-standing success, CBS's continued exploitation of her masters for over three decades, and provisions in the CBS Agreement requiring non-recoupable payments, Defendants' claim that SB Productions owes Gaynor nothing is implausible. Upon information and belief, SB Productions has earned substantial income from these works, and its assertion of an "unrecouped" status is merely a pretext to avoid accounting and paying royalties owed to Gaynor.

41. Gaynor has, and continues to maintain, ownership interests and rights to royalty payments in connection with songs written and/or performed by her. In all copyright registrations filed by or on behalf of Diamond for Gaynor's works of which she is

aware, Gaynor is identified as performer and/or author.

42. Diamond improperly listed himself as a co-author of at least one song in a copyright registration. In the copyright registration for "More Than Enough," Diamond listed himself as co-author. *See* Exhibit B. At no time did Gaynor co-write any song with Diamond.

43. Upon information and belief, SB Productions has entered into licensing agreements with third parties for Gaynor's work for which Gaynor has not received any compensation. By way of example, in or about February 2019, SB Productions licensed the recording "I Am What I Am" for use in a Peugeot commercial and did not account to or pay Gaynor in connection with that use.

44. Upon information and belief, entities including SB Records, SB Music, SB Publishing, and Oceans Blue (collectively, the "Diamond Entities") are, and at all relevant times have been, owned and controlled by Diamond, who now contends that these companies were dissolved in or about the early 2000s and that all of their assets, contracts, and rights were transferred or assigned to purported successor entities, including but not limited to SB Productions.

45. Notwithstanding Diamond's assertions, there are no publicly available corporate, contractual, or recording-industry records of any such assignments or transfers, and the Diamond Entities continue to be listed as owners, claimants, publishers, or parties of record in connection with Plaintiffs' works and recordings in United States

Copyright Office registrations, rights organizations, administration agreements, and related industry documentation.

46. Upon information and belief, in or about 2018, Diamond sought to reinstate SB Productions, to "roll back" SB Music and Oceans Blue Music into SB Productions, out of concern of being sued because those companies had been dissolved, even while some of the Diamond Entities continue to this date assert in their catalogues that they own master and/or publishing rights in Gaynor's works.

47. Upon information and belief, the Diamond Entities have either not been validly dissolved and continue to operate, hold ownership interests, and exploit Plaintiffs' works, or have been used by Diamond as part of a structure to obscure royalty flows. Accordingly, the Diamond Entities are properly named as defendants to ensure that all entities claiming, or appearing to claim, an interest in Plaintiffs' copyrights and royalties are before the Court.

48. For many years, and across multiple recording, publishing, synchronization, streaming, and other licensing agreements concerning Plaintiffs' works, Gaynor has repeatedly requested payment and a full accounting from Defendants. Upon information and belief, Defendants have failed to provide meaningful accountings or to pay royalties to Plaintiffs and have failed to provide transparency as to licenses, uses, protections, or other exploitations of Plaintiffs' music, even as Defendants have

continued to receive payments related to those agreements.

49. Upon information and belief, Defendants have received, retained, concealed and suppressed payments that should have been made to Gaynor as part of a long-standing scheme to suppress income due to Gaynor and divert revenues to Defendants' own benefit.

50. Regarding any additional agreements between Gaynor and Defendants and between Defendants and third parties related to Gaynor's works, Defendants have stated that certain additional written agreements may in fact exist, but have not produced them despite various requests. Under principles of equity and estoppel, Defendants should be estopped from asserting any defense that depends on Gaynor's lack of possession of the written contracts, including any defense that has failed to allege sufficient contractual detail, where any such lack of access results from Defendants' exclusive control over, and refusal to disclose, the agreements on which they claim their rights.

## FRAUD AGAINST ROBIN RANDALL

51. Beginning in or about April 2000 and continuing to the present, Diamond has falsely claimed ownership and publishing rights in copyrighted works authored and owned by Randall. Relying on those false claims, Diamond has entered into licensing agreements and exploited the works without authorization by reproducing, distributing, and publicly displaying them and by purporting to license others to do

the same.

52. It is presented that Diamond fraudulently attempted to transfer or assign ownership of works authored and/or owned or controlled by Randall and/or Judithe, by fraudulently adding or causing to be added Plaintiff Randall's signature to assignment documents and inducing or otherwise wrongfully causing Judithe to execute assignments purporting to transfer their ownership interests to Defendant SB Music in numerous copyrighted works, including but not limited to "The Child Inside," "Just Friends," "Never Could Call it Love," "Forever Friends," "Two Souls One Breath," and "The Best of Whatever You Are," and "Close My Eyes." Exhibit C annexed hereto includes a non-exclusive list of copyright registrations relevant to this Complaint ("Randall Intellectual Property").

53. At the time Diamond procured these purported assignments, Judithe was seriously ill and incapacitated. In or about early 2000, Judithe began exhibiting pronounced symptoms of mental illness, was placed under a physician's care, and thereafter was repeatedly hospitalized, including admission to Thalians Clinic at Cedars-Sinai Medical Center in Los Angeles. She was ultimately diagnosed with paranoid schizophrenia and bipolar disorder. Judithe's Cedars-Sinai physician stated that she suffered continuously from severe emotional lability and related illness, including anxiety, depression, and an eating disorder, and that she was hospitalized for

AMENDED COMPLAINT - 15

extended periods in an inpatient psychiatric facility during the 2000–2002 period.

54. Upon information and belief, Diamond visited Judithe while she was hospitalized, and multiple agreements were signed during those visits. It is believed she was coerced into signing not only her own name but also Randall's name on those agreements.

55. Randall did not sign, and expressly denies signing, any agreement assigning her rights to Diamond or to any corporate defendant.

56. Upon information and belief, Judithe could not have executed any assignment or agreement unless Diamond came to her at the hospital. Had any signing occurred at the family home, Randall and/or her siblings would have been present and would have supervised the process.

57. Diamond obtained these purported assignments through fraud in the inducement and/or execution. By misrepresenting the purpose, terms, and legal effect of the documents to a gravely infirm woman, Diamond caused Judithe to sign instruments purporting to transfer her copyright interests in works for which the rightful successor in interest is Randall.

58. The assignments believed to have been procured by fraud and coercion include, but are not limited to, seven Assignment/Sale of Copyright and Notice of Assignment of Copyright and Income with dates ranging from April 21, 2000 to November 1, 2001. Copies of the assignments presently in Plaintiffs' possession are annexed

hereto as Exhibit D ("Randall Assignments").

59. The relevant assignments, including the Randall Assignments, grant Defendants full rights in perpetuity with no obligation to pay any royalties. In contrast, the consideration alleged by Diamond that is owed by Defendants is a merely $305 per song, though some of the Randall Assignments recite consideration of only $250, and one $500 per song.

60. Those small amounts are far below the then market value Randall and Judithe's works, particularly because certain of the assigned works featured in highly successful television series and motion pictures.

61. Since at least April 2000, Diamond has publicly held himself out as the owner, publisher, and in some instances a co-writer of Randall's copyrighted works, including but not limited to "The Best of Whatever You Are," "Tough Boy," "Tough Boy ft. Randall Cuomo," and "The Child Inside," despite having no actual involvement in their creation and no lawful basis to claim such rights.

62. Robin Randall is a rightful beneficial owner of the intellectual property of her deceased mother, Judithe, together with two siblings who have authorized Randall to act on their behalf in this action pursuant to Powers of Attorney given.

63. Randall has registered many of her musical compositions with the U.S. Copyright Office, including but not limited to, the compositions and recordings mentioned

herein.

64.   Defendants have engaged in and continue to engage in a course of conduct constituting copyright infringement, including unauthorized reproduction, distribution, public display, and purported licensing of Randall's works.

### FACTS COMMON TO ALL CAUSES OF ACTION
### Systemic Breaches by Defendants

65.   Defendants have, without rightful authority, licensed the compositions and recordings at issue in this action to various third parties for third-party exploitation. In nearly all instances, Defendants have failed to properly credit Plaintiffs' royalty accounts for such exploitation.

66.   Defendants have released and/or caused to be released to music carriers containing one or more of the compositions or recordings for which royalties are due, yet Defendants have failed to provide Plaintiffs any information or payment relating to such releases.

67.   Defendants and/or its licensees have authorized the digital distribution of Plaintiffs' compositions and recording in foreign territories without providing any information or payment regarding those exploitations.

68.   Defendants have collected royalties from the exploitation of Plaintiffs' works and were obligated, under contract, statute and common law, to pay a portion of those royalties to Plaintiffs. Defendants have not provided Plaintiffs with any information

regarding the income derived from such exploitation, nor have they paid Plaintiffs the amounts owed.

## FIRST CAUSE OF ACTION
### (COPYRIGHT INFRINGEMENT
### BY RANDALL AGAINST DEFENDANTS)

69.    Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

70.    Plaintiff Randall and her late mother co-authored original musical works, including, without limitation, the works identified above as the Randall Intellectual Property.

71.    The Randall Intellectual Property are original works of authorship fixed in a tangible medium and are subject to protection under the U.S. Copyright Act, 17 USCS § 101 *et seq*.

72.    Randall is the legal and/or beneficial owner of exclusive rights under 17 USCS § 106 in the Randall Intellectual Property by virtue of her co-authorship and succession to, or other lawful acquisition of, Judithe's ownership interest.

73.    The works identified in the Randall Intellectual Property have been registered with the U.S. Copyright Office prior to suit. By way of example without limitation, registrations include Registration Numbers PA0000675525, PAu002373540.

74.    Defendants contend that the Randall Intellectual Property was assigned to them. Randall denies that any valid assignment to Defendants exists.

75. Randall asserts she did not sign any assignment or transfer of her rights in the Randall Intellectual Property to Defendants.

76. Upon information and belief, Diamond fraudulently induced Judithe to sign purported assignments while she was incapacitated, including during periods when she was confined in a mental health facility. Randall has never ratified any such purported assignments.

77. Any purported assignments or transfers on which Defendants rely are void and/or voidable because they were procured by fraud, misrepresentation, undue influence, duress, and/or lack of capacity.

78. Defendants, without authorization from Randall, have infringed and continues to infringe Randall's copyrights in the Randall Intellectual Property by, among other things, reproducing or allowing the reproduction of the Works, distributing or allowing the distribution of copies or phonorecords of the Works, and allowing public performing the Randall Intellectual Property, including through digital transmission and streaming, in violation of 17 U.S.C. §§ 106 and 501.

79. Defendants have exploited the Randall Intellectual Property by, without limitation, issuing and authorizing digital downloads and interactive streams, licensing synchronizations, manufacturing and distributing phonorecords, sublicensing to third parties, and collecting and retaining royalties, fees, and other proceeds from

such exploitations, all without authorization from Randall and without accounting to or sharing profits with Randall.

80. Defendants' infringement has been willful, intentional, and in reckless disregard of Randall's rights, including because Defendants knew or should have known that he lacked any valid assignment, license, or other authorization to exploit the Randall Intellectual Property and nevertheless proceeded to do so.

81. As a direct and proximate result of Defendants' infringing conduct, Randall has suffered, and continues to suffer, damages, including but not limited to lost licensing revenue, diminution of the value of the Randall Intellectual Property, and harm to market and goodwill, while Defendants have been unjustly enriched through the receipt of revenues and profits attributable to the infringement.

82. Defendants' ongoing infringement has caused and, unless enjoined, will continue to cause irreparable harm to Randall for which there is no adequate remedy at law.

83. Randall is entitled to all remedies available under the Copyright Act, including, as applicable, actual damages and Defendants' profits or statutory damages, injunctive and other equitable relief, impoundment and disposition of infringing materials, and recovery of costs and reasonable attorneys' fees pursuant to 17 U.S.C. §§ 502–505.

**SECOND CAUSE OF ACTION**
**(DECLARATORY JUDGMENT AFFIRMING GAYNOR'S SOLE AUTHORSHP OF WORK)**

84. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

85. An actual controversy exists between Gaynor and Defendants concerning the authorship and ownership of certain musical works, including but not limited to the work entitled "MORE THAN ENOUGH" with Copyright Registration number PA0000246894 ("Disputed Works").

86. Gaynor and Diamond have adverse legal interests in the Disputed Works because Diamond claims to be a co-author and co-owner, while Gaynor denies any co-authorship with Diamond. This dispute is concrete, immediate, and real, and warrants declaratory relief.

87. Gaynor has standing to seek a declaration of rights because Diamond's claim of co-authorship clouds Gaynor's exclusive ownership and has been used to secure registrations and exercise purported control over the Disputed Works.

88. Gaynor alleges that she independently created the Disputed Works and is their sole author. She composed the music, wrote the lyrics, and fixed the works in a tangible medium of expression without any contribution from Diamond.

89. Diamond made no independently copyrightable contribution to the Disputed Works and did not collaborate with Gaynor with the intent that their respective contributions

be merged into inseparable or interdependent parts of a unitary whole. Accordingly, Diamond's claim of co-authorship is invalid and without legal basis.

90. Diamond nonetheless wrongfully obtained copyright registrations for the Disputed Works, listing himself as a co-author and his company, SBM, as the joint owner. As the sole author, Gaynor is entitled to a declaration recognizing her as the sole author and as a joint owner of the copyrights in the Disputed Works pursuant to 17 U.S.C. § 201.

91. Gaynor respectfully requests that the Court enter judgment in favor of Gaynor and against Diamond as follows:

- A declaration that Gaynor is the sole author and beneficial owner of the copyrights in the Disputed Works pursuant to 17 U.S.C. § 201;

- An order directing the Register of Copyrights to correct the registration records for the Disputed Works to reflect Gaynor as the sole author and beneficial owner;

- A permanent injunction pursuant to 17 U.S.C. § 502 prohibiting Diamond and the other Defendants from claiming co-authorship or ownership of the Disputed Works and from exploiting the Disputed Works without Gaynor's permission;

- For an Order for a full accounting of all royalty or other payments received by Defendants for the exploitation of the Disputed Works;

- For a judicial declaration of the parties' respective financial interests, contributions, reimbursement rights, and equitable adjustments relating to the

Disputed Works and that the Court impose a constructive trust upon royalty,

license, and other proceeds related to Defendants' exploitation of the Disputed

Works to secure repayment, reimbursements, and equitable allocations owed to

the Gaynor.

- An award of reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

- Such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT BY DEFENDANTS AS TO GAYNOR)

92. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

93. By any of the Gaynor Agreements, Defendants are required to be transparent and report sales and earnings to Gaynor.

94. Gaynor has performed each and all of the conditions, covenants and obligations imposed upon her under the terms of the Gaynor Agreements.

95. Defendants have repeatedly breached its obligations to Gaynor by failing to submit accurate and truthful reports and royalty payments to Gaynor, by, among other things: inappropriately failing to report to Gaynor all payments received from third parties; failing to report to Gaynor all sales of the relevant songs and recordings; and, failing to provide Gaynor, when requested, of pertinent information and documentation concerning the licensing of the relevant recordings.

96.    Gaynor has not had the opportunity to audit Defendants in an effort to determine whether Defendants owe any royalties as required.

97.    Defendants have refused to provide all records needed to calculate the amount of underpayments, but based on the records available and upon information and belief, Gaynor is aware that over one million dollars is owed.

98.    As a direct and proximate result of Defendants' acts and omissions, as alleged herein, Gaynor has suffered substantial damages, together with accrued interest thereon at the legal rate, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT AGAINST DEFENDANTS FOR TERMINATION AND RESCISSION – BY RANDALL AGAINST ALL DEFENDANTS)

99.    To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

100.    Randall denies having signed any agreement or assignment purporting to transfer her rights in the Randall Intellectual Property to Defendants. Additionally, the purported assignments were fraudulently and wrongfully obtained by inducing Judithe, who lacked the capacity to understand their content and purpose, to execute those documents both on her own behalf and on behalf of Plaintiffs, without Randall's knowledge or consent.

101. Defendants have received an overwhelming windfall from the Randall Assignments resulting from the fraud in the inducement and/or execution committed upon Randall and Judithe.

102. Plaintiffs are entitled to a declaration that the Randall Assignments are voided or rescinded, with all rights thereunder reverting to Randall.

### FIFTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY OWED BY DIAMOND TO GAYNOR)

103. To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

104. Commencing as early as 1983, Gaynor has had a special relationship with Diamond and their predecessors and/or successors in interest. To this day, Gaynor's name and likeness adorn Defendants' publicity material.

105. Gaynor once entrusted her works to Diamond and their predecessors and/or successors in interest under the Gaynor Agreements.

106. Gaynor continued to rely on Defendants and their predecessors and/or successors-in-interest to ensure that the recordings at issue herein were properly administered and ensure that Gaynor would receive the benefit from the contract and relationship initiated more than twenty (20) years ago.

107. Upon information and belief, Defendants' improper dealings have significantly depleted and continue to deplete the income that Gaynor would otherwise be entitled to receive.

108. Because of Defendants' exclusive and total control over certain distribution, sale, licensing and/or exploitation of the recordings of Gaynor, and Defendants' obligation to accurately and fully account for, report and pay to Gaynor all royalties due and owing Plaintiffs from said exploitation of the Gaynor compositions and recordings,, Defendants placed and continue to place themselves in a position of trust and confidence with regard to Gaynor.

109. Defendants have an ongoing duty to account fairly, accurately and promptly for all royalties owed to Gaynor under the Gaynor Agreements, not to act in its self-interest to the detriment of Gaynor or to deprive Gaynor of the benefits under such contracts.

110. As a result of Defendants' assumption of the fiduciary obligation to account and pay royalties to Gaynor, Defendants owe a duty to Gaynor to act in the highest good faith; to perform his duties in a competent and proper manner; to make full disclosure of all material facts to Gaynor; to refrain from engaging in conduct adverse to Gaynor; and, to account promptly and accurately for all royalties generated under Gaynor Agreements.

111. By continuously putting its own interests above those of Gaynor, Defendants have breached their fiduciary duty to Gaynor.

112. As a direct and proximate result of Defendants' breach of fiduciary duty and breach of trust and confidence, Gaynor has suffered substantial damages, together with accrued interest thereon at the legal rate, to be proven at trial.

## SIXTH CAUSE OF ACTION
### (FRAUD BY DIAMOND AGAISNT RANDALL)

113. To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

114. Defendants possess several written assignments of musical works dated between April 21, 2000 and November 1, 2001, which Diamond alleges were signed by the late Judithe Randall and Robin Randall. These assignments are defined above as the Randall Assignments and attached hereto in Exhibit D.

115. Randall alleges that any such assignments of Randall's and Judithe's works to Diamond, including the Randall Assignments, are fraudulent and not authentic.

116. Plaintiff Randall asserts she never signed the Randall Assignments or any other assignment of her musical works to Defendants. Randall alleges that Defendant Diamond fraudulently added or caused her signature to be added to the assignment documents without her knowledge, authorization, or consent.

117. Randall further alleges that Diamond fraudulently induced or coerced Judithe to sign the Randall Assignments and other assignments while Judithe was seriously ill and incapacitated, and or hospitalized.

118. Upon information and belief, Diamond visited Judithe while she was hospitalized, and during those visits, as well as possibly other visits to her home, multiple agreements were signed, including the Randall Assignments.

119. In or about early 2000, Judithe began exhibiting severe symptoms of mental illness,

was placed under a physician's care, and was repeatedly hospitalized, including at the Thalians Clinic at Cedars-Sinai Medical Center in Los Angeles. She was ultimately diagnosed with paranoid schizophrenia and bipolar disorder, along with related conditions such as anxiety, depression, and an eating disorder, and remained in inpatient psychiatric care for extended periods between 2000 and 2002.

120. Plaintiffs allege that, despite knowing the Randall Assignments were invalid, Defendant Diamond fraudulently exploited Randall's works by, including but not limited to, re-registering certain compositions with ASCAP under Silver Blue as publisher, or entering administration agreements with major music companies. Diamond also repeatedly misrepresented himself as the author and/or rightful owner of some of Randall's works.

121. Plaintiff Randall alleges that Diamond made these false representations and engaged in the foregoing and other wrongful conduct intentionally and with the purpose of deceiving Randall and others, so that Defendants could claim ownership and control of Randall's works and exploit them for Defendants' benefit and without compensating Randall.

122. As a direct and proximate result of Defendants' fraudulent conduct, Randall has suffered substantial damages in an amount to be proven at trial, together with

accrued interest thereon at the legal rate.

## SEVENTH CAUSE OF ACTION
### (MISREPRESENTATION BY DIAMOND TO GAYNOR)

123. To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

124. Defendants Diamond and SB Productions have misrepresented their ownership and right to collect royalties.

125. Defendants Diamond and SB Productions have misrepresented that royalties are not owed on Plaintiffs' intellectual property.

126. Among the misrepresentations are statements (i) that Diamond co-wrote the song "More than Enough"; (ii) that SB Productions owns the masters to several of Gaynor's songs, which are held by SONY;  and (iii) that SB Productions holds the publishing rights to Randall's songs.

127. That these misrepresentations continue to date and appear in recent articles and interviews.

128. As a direct and proximate result of Diamond's fraudulent contract with an incompetent person, Gaynor has suffered substantial damages, together with accrued interest thereon at the legal rate, to be proven at trial.

## EIGHTH CAUSE OF ACTION
### (ACCOUNTING FOR PROFITS - UNJUST ENRICHMENT AS TO ALL DEFENDANTS)

129. To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

130. Inasmuch as the Gaynor Agreements and Randall Assignments will be deemed terminated, the Plaintiffs are entitled to be placed in the position they would otherwise be in had Defendants acted in accordance with such termination.

131. Upon information and belief, Defendants have received well in excess of any consideration provided to Plaintiffs under the Gaynor Agreements.

132. Upon information and belief, Defendants have wrongfully profited from the exploitation of Randall's works under the Randall Assignments.

133. Upon information and belief, Universal has already received well in excess of all consideration it provided to Plaintiffs.

134. Plaintiffs are entitled to compensation they would otherwise have received had Defendants not exercised control over the Plaintiffs' works.

135. Plaintiffs are entitled to an accounting of any and all of Defendants' profits for the exploitation of the works owned by Plaintiffs in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief and respectfully request that the Court:

a) Award to Plaintiffs

(1) damages sufficient to compensate Plaintiffs for Defendants' actions, but in any event no less than $2,000,000.00 on the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action;

(2) Full costs for this action, including reasonable attorney's fees;

(3) An accounting to determine all royalties owed to Plaintiffs;

(4) Prejudgment and post-judgment interest on all sums; and

(5) Punitive damages.

b) Declare that the Gaynor Agreements have been materially breached, terminated and that Gaynor is the owner of the intellectual property related to the music, songs and/or recordings made thereunder;

c) Declare that the Randall Assignments are void and that Randall is the owner of the intellectual property related to the music, songs and/or recordings made thereunder;

d) Grant a preliminary injunction enjoining and preventing Defendants from continuing to distribute, license and use the intellectual property at issue in this action without Plaintiff's knowledge; and

e) Award Plaintiffs any further relief as this Court may seem just and proper;

f) Plaintiffs hereby request a trial by jury for all claims herein.

Dated: December 1, 2025

Respectfully Submitted,

Richard A. Marcus, Esq. (CA SBN 183140)
Law Offices of Richard A. Marcus
28494 Westinghouse Place, Suite 205
Valencia, California 91355
Tel: (661) 257-8877
Email: Richard@attorneyrichardmarcus.com

**DROHAN LEE LLP**

By: */Vivian Rivera Drohan/*
Vivian Rivera Drohan
5 Penn Plaza, 19th Floor
New York, New York 10001
Tel: (212) 710-0004
vdrohan@dlkny.com

*Attorneys for Plaintiffs*